UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MISMA RIVERA, individually and on behalf of all others similarly situated,

       Plaintiff,

       v.

METROPCS FLORIDA, LLC,

       Defendant.

Case No: 19-CV-61664

## METROPCS FLORIDA, LLC'S MOTION TO COMPEL ARBITRATION

Pursuant to 9 U.S.C. §§ 3 and 4, Defendant MetroPCS Florida, LLC ("Metro") hereby respectfully moves this Court enter an Order: (i) compelling individual arbitration of Plaintiff Misma Rivera's claims brought for alleged violations of 47 U.S.C. § 227(b) and 47 U.S.C. § 227(c), as required by his agreement with Metro; and (ii) staying or dismissing this litigation until arbitration is complete.

## INTRODUCTION

Plaintiff Misma Rivera purports to assert Telephone Consumer Protection Act ("TCPA") claims against Metro based upon text messages that were allegedly sent to him on his wireless phone. Even if a violation occurred (one did not), this Court is not a proper forum for Plaintiff's claims. Plaintiff's wireless service agreements with Metro require him to individually arbitrate—rather than litigate in court—the claims he attempts to assert in this lawsuit.

Metro's Motion to Compel Arbitration should be granted because Plaintiff is bound by the arbitration agreements he entered into with Metro. This case arises directly from Plaintiff's status as a "consumer" of Metro's services. *See* Compl. ¶¶ 26, 34. As a consumer of Metro services,

Plaintiff accepted Metro's Terms and Conditions and agreed to arbitrate on an individual basis any claims or disputes in any way related to Metro's services. Plaintiff also agreed to waive his right to participate in a class action unless he opted out, which he did not do. Specifically:

- The scope of Plaintiff's agreement to individually arbitrate his claims is broad, stating that "any and all claims or Disputes between [Plaintiff] and [Metro], in any way related to or concerning the Agreement, [Metro's] Privacy Policy, [Metro's] Services, devices or products, will be resolved by binding arbitration." *See* Declaration of Hope Norris, attached hereto as Exhibit A ("Norris Decl.") ¶¶ 21, 23.

- Plaintiff's claims in this litigation fall squarely within the scope of the arbitration agreements. Plaintiff's claims relate to or concern his Metro device because he: (i) bases his claims on text messages that were sent by Metro to the device; (ii) the text messages were sent by Metro to Plaintiff in connection with Metro deals and benefits that he could receive as part of his Metro wireless service; and (iii) his agreements with Metro expressly allow "Metro by T-Mobile [to] contact you in any way, including, pre-recorded or artificial voice or text messages delivered by an automatic telephone dialing system, or e-mail messages delivered by an automatic e-mailing system." *Id.* ¶ 28.

For these reasons, and those set forth more fully below, the Federal Arbitration Act ("FAA") requires this Court to grant this motion and move this dispute into arbitration as quickly as possible. Thus, this Court should grant Metro's Motion to Compel Arbitration.

## FACTUAL BACKGROUND

### A. **Plaintiff Agreed to Metro's Terms and Conditions.**

Plaintiff Misma Rivera is a Metro customer with a Metro account ending in 6279 (the "Rivera Account"). *Id.* ¶ 4. On September 27, 2010, Plaintiff activated a line of service with

Metro. *Id.* ¶ 6. At the time of activation, Rivera entered a contract with Metro, which incorporated Metro's 2010 Terms and Conditions, and received a copy of the Terms and Conditions. *Id.* ¶¶ 9-12. The Terms and Conditions contain a mandatory arbitration agreement. *Id.* ¶¶ 11, 13, 22-23.

Since his initial activation, Rivera has not only continued to use his Metro device, but has upgraded the device multiple times, most recently on June 10, 2019. *See id.* ¶ 8. Metro's 2018 Terms and Conditions were in effect at the time of Rivera's most recent upgrade. *See id.* ¶ 10. As part of the upgrade process, Metro automatically generated Terms and Conditions, which were sent to Rivera via SMS to his phone number ending in 6059 in both Spanish and English. *See id.* ¶ 17.

The 2018 Terms and Conditions clearly advise customers that they agree to be bound to the Terms and Conditions by doing any of the following:

    (a) Giving Metro written or electronic signature or telling Metro orally that you accept the Metro by T-Mobile Terms and Conditions of Service;

    (b) Activating Service (if you are a new subscriber);

    (c) Using your Service after your Service is activated or after you make a change or addition to your Service;

    (d) Paying for the Service; or

    (e) Failing to activate Service within 30 days after the purchase of your Metro by T-Mobile wireless device.

*Id.* ¶ 18. By activating, using, and paying for Metro service, Mr. Rivera agreed to be bound by, Metro's T&Cs and the arbitration clause therein. *Id.* ¶¶ 9, 14-15, 19-20.

The arbitration agreement—to which Mr. Rivera agreed—is featured prominently on the third page of the 2018 Terms and Conditions in bold lettering. Under the heading **Metro by T-Mobile Terms and Conditions of Service**, there is a notice before the first paragraph that reads, "**IMPORTANT: READ THIS AGREEMENT CAREFULLY. IT REQUIRES THE USE OF**

**INDIVIDUAL ARBITRATION RATHER THAN JURY TRIALS OR CLASS ACTIONS TO RESOLVE DISPUTES.**" *Id.* ¶ 22 (emphasis in original).  The Terms and Conditions also prominently disclose and explain the arbitration obligation as follows:

> **Dispute Resolution and Arbitration.  We each agree that, except as provided below, any and all claims or Disputes between you and us, in any way related to or concerning the Agreement, our Privacy Policy, our Services, devices or products, will be resolved by binding arbitration.** . . . "Dispute" shall be given the broadest possible meaning and shall include any dispute, claim, or controversy arising from or relating to this Agreement or Services and/or Products provided under this Agreement, including but not limited to: (1) all claims for relief and all theories of liability, whether based in contract, tort, statute, regulation, ordinance, fraud, or misrepresentation; (2) all disputes regarding the validity, enforceability or scope of this arbitration agreement (with the exception of its class action waiver); (3) all disputes that arose before this Agreement; (4) all disputes that arise after the termination of this Agreement; and (5) all disputes that are the subject of a putative class action in which no class has been certified. . . .
>
> If you do not wish to be bound by this arbitration agreement, you must notify us of your desire to do so within 30 days of initiating Service, or, if you have never had the opportunity to opt out of arbitration, within 30 days of the date of the change notice giving you the opportunity. . . .

*Id.* ¶ 23 (emphasis in original).

The 2018 Terms and Conditions also contain a class action waiver and jury trial waiver:

> **CLASS ACTION WAIVER**. **WE EACH AGREE THAT ANY DISPUTE RESOLUTION PROCEEDINGS, WHETHER IN ARBITRATION OR COURT, WILL BE CONDUCTED ONLY ON AN INDIVIDUAL BASIS AND NOT IN A CLASS OR REPRESENTATIVE ACTION OR AS A MEMBER OF A CLASS, CONSOLIDATED OR REPRESENTATIVE ACTION.** If a court or arbitrator determines in an action between you and us that this Class Action Waiver is unenforceable, the arbitration agreement will be void as to you. **If you choose to pursue your claim in court by opting out of the arbitration provision as specified above, this Class Action Waiver provision will not apply to you. Neither you, nor any other customer, can be a class representative, class member, or otherwise participate in a class, consolidated**

>or representative proceeding without having complied with the opt out requirements above.
>
>**JURY TRIAL WAIVER.**   If a claim proceeds in court rather than through arbitration, **WE EACH WAIVE ANY RIGHT TO A JURY TRIAL.**

*Id.* ¶ 25 (emphasis in original).

Metro makes customers aware of this dispute resolution provision through a variety means, for example, when a customer purchases a new phone from Metro, he is provided a one-page sheet explaining Metro's return and upgrade policies, highlighting important aspects of Metro's Terms and Conditions, and providing the web address for the full terms and conditions (the "Metro Information Sheet").  *Id.* ¶¶ 12-14.  On the Metro Information Sheet, there is a section entitled, "Metro Terms and Conditions," and the first line of this section reads in bold print:

>**By activating or using Metro Service, you agree to the Metro Terms and Conditions of Service. Metro requires Arbitration of Disputes unless you opt-out within 30 days of activating. Details and the full version can be viewed at metropcs.com/terms.**

*Id.* ¶ 13.  Each Metro box also contains a sticker (the "Metro Box Sticker") on the outside of the box which must be removed before the box can be opened.  *Id.* ¶ 15.  The Metro Box sticker references Metro's Terms and conditions and the applicability of the arbitration provision.  *Id.*  It also directs customers to the full Terms and Conditions on Metro's website.  *Id.*  Additionally, when a customer purchases a new device from Metro, he is sent a text message notifying him of the Terms and Conditions and directing him to the website containing the Terms and Conditions: https://www.metropcs.com/terms-conditions/terms-conditions-service.html.  *Id.* ¶ 16.  Metro's records reveal that a text message notifying Mr. Rivera of the Terms and Conditions was sent to him several times over the last few years, including on June 10, 2019, November 28, 2018, and October 20, 2017.  *Id.* ¶ 17.  Furthermore, the Terms and Conditions are also located on Metro's website, contain the official Metro logo, and clearly contain arbitration provisions.  *Id.* ¶ 29.

Although the Terms and Conditions provided Plaintiff the opportunity to opt out of arbitration, he never did. *Id.* ¶¶ 24-25, 30. Metro's records also reveal that Rivera regularly uses his Metro phone and service and pays his bill. *Id.* ¶¶ 7-8, 19-20.

## ARGUMENT & AUTHORITIES

### A.     The FAA Applies and Requires Enforcement of the Arbitration Agreement.

The FAA preempts state law and requires enforcement of arbitration agreements by providing that agreements to arbitrate "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. "A district court must compel arbitration and stay the underlying action if the parties had an earlier agreement to arbitrate their dispute." *Shea v. BBVA Compass Bancshares, Inc.*, No. 1:12-cv-23324-KMM, 2013 U.S. Dist. LEXIS 31906, at *9 (S. D. Fla. March 7, 2013); *see also Sanders v. Comcast Cable Holdings, LLC*, No. 3:07-CV-918J33HTS, 2008 WL 150479, at *3 (M.D. Fla. Jan. 14, 2008).

The FAA unquestionably applies to the arbitration agreements at issue here. The FAA applies to any written arbitration agreement contained in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. The Supreme Court has expansively construed the phrase "involving commerce" as extending the FAA's reach to the full limit of Congress' Commerce Clause power. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 268 (1995).

Here, Metro's Terms and Conditions expressly provide that "[b]ecause this Agreement and the Services provided under this Agreement concern interstate commerce, this arbitration agreement shall be governed by the Federal Arbitration Act." Norris Decl. ¶ 26. Moreover, the FAA applies because the contract between Metro and Plaintiff is a contract between citizens of different states. *See*, *e.g.*, *Kong v. Allied Prof'l Ins. Co.*, 750 F.3d 1295, 1303 (11th Cir. 2014) (finding arbitration provision governed by FAA because Allied is an Arizona corporation and insured was a Florida citizen).

A limited liability corporation's ("LLC's") citizenship is determined by the citizenship of all of its members. *Brady v. Chrysler Grp.*, No. 07-14394-CIV, 2008 WL 1957988, at *1 (S.D. Fla. May 5, 2008) ("An LLC is a citizen of every state in which its members are citizens . . . . If a member is itself an LLC, its members will determine its citizenship, which will in turn determine the citizenship of the LLC of which it is a member."). Metro is a Delaware LLC, whose sole member is T-Mobile South, LLC, another Delaware LLC. Norris Decl. ¶ 3. T-Mobile South, LLC's sole member is T-Mobile USA, Inc., a Delaware corporation with its principal place of business in Washington. *Id.* Thus, Metro's citizenship is Delaware and Washington. Plaintiff alleges that he is "a resident of Broward County, Florida." *See* Compl. ¶ 8.

Finally, the FAA applies because Plaintiff's agreements with Metro relate to the provision of wireless service to Plaintiff across state line, further making clear that the agreements affect interstate commerce. *See generally Goldberg v. Sweet*, 488 U.S. 252, 254-55 (1989) (telecommunications industry constitutes interstate commerce).

Even if there is any doubt that the agreements are enforceable (which there is not), the Court should interpret any ambiguity in favor of enforcement. "The principal purpose of the FAA is to ensur[e] that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (internal quotation marks omitted). The FAA both "embod[ies]" and declares a "national policy favoring arbitration." *Id.* at 346; *Preston v. Ferrer*, 552 U.S. 346, 353 (2008). The Supreme Court has interpreted the FAA as reflecting both "a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *Concepcion*, 563 U.S. at 333. "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Id.* at 339.

The Supreme Court has consistently recognized this strong public policy in favor of arbitration. *See, e.g. Am. Express Co. v. Italian Colors Rest.,* 133 S. Ct. 2304, 2308–09 (2013); *Concepcion*, 563 U.S. at 339. Florida law is in accord. *Maguire v. King*, 917 So. 2d 263, 266 (Fla. Dist. Ct. App. 2005), *approved sub nom. Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587 (Fla. 2013) ("Florida public policy favors resolving disputes through arbitration when the parties have agreed to arbitrate.").

To further the FAA's purposes, the Supreme Court has emphasized that courts should interpret arbitration clauses liberally in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."). The Supreme Court has instructed that courts should "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Preston*, 552 U.S. at 357. "A prime objective of an agreement to arbitrate is to achieve streamlined proceedings and expeditious results." *Concepcion*, 563 U.S. at 346.

Therefore, the FAA applies to the agreements at issue here and requires enforcement of the arbitration agreement.

### B. **Plaintiff is Bound by the Arbitration Agreement in Metro's Terms and Conditions.**

Plaintiff accepted the arbitration agreements in the Terms and Conditions when he first activated, used, and paid for his device. Norris Decl. ¶¶ 7-8, 14-15, 18-20. And although the Terms and Conditions provided an opt-out provision that Plaintiff could have taken advantage of had he not wanted to arbitrate, Plaintiff never opted out, thereby consenting to the arbitration provisions. *Id*. ¶¶ 24-25, 30. Plaintiff continued to demonstrate his intent to be bound by the Metro Terms and Conditions during each subsequent device update. For example, Mr. Rivera

upgraded his device on October 20, 2017, November 28, 2018, and June 10, 2019. *Id.* ¶ 8. After each of those upgrades, Metro sent the Terms and Conditions to the Rivera Account by SMS in both Spanish and English. *Id.* ¶ 17. Although Plaintiff had an opportunity to opt out of the arbitration provision, he chose not to. *Id.* ¶¶ 24-25, 30. Instead, he used his device and service, thereby agreeing to the arbitration provision of the Terms and Conditions.

In addition to activating, using, and upgrading his device, Plaintiff also manifested his agreement to arbitrate any disagreements with Metro by continuously paying for his device and service. The Rivera Account reflects a number of payments received including, but not limited to, payments for service on September 27, 2010, the day Mr. Rivera opened his account, and on October 21, 2017; November 28, 2018; and June 11, 2019, all within one day of his account upgrades. *Id.* ¶ 19. From January to July of 2019, Metro received payment on the Rivera Account at least seven distinct times. *Id.* ¶ 20. Through these, and other, payments to Metro, Rivera once again affirmed his commitment to agree to arbitrate any disputes with Metro.

  **C.** **Plaintiff's Claims are Subject to Arbitration.**

    *1.* *The arbitration clause delegates decisions on arbitrability to an arbitrator.*

The Court should compel Plaintiff to arbitrate because he agreed to an arbitration provision enforceable under the FAA. Thus, there are no further issues to be decided by the Court, including whether Plaintiff's claims are subject to arbitration. This is because the arbitration provision to which Plaintiff agreed delegates questions of arbitrability to the arbitrator.

"When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019). "In those circumstances, a court possesses no power to decide the arbitrability issue." *Id.* at 529; *see Carnevali v. Yardley Car Co.*, No. 18-cv-62908, 2019 U.S. Dist. LEXIS 10034, at * (S.D. Fla. Jan. 18, 2019) ("[A]s the Supreme Court recently

ruled, even in instances where the argument in support of arbitrability is wholly groundless, the threshold issue of arbitrability nonetheless must be decided by the arbitrator, not the Court, if the contract delegates the arbitrability question to an arbitrator.").

The arbitration clause in Metro's terms and conditions unmistakably delegates questions of arbitrability to an arbitrator. The arbitration provision states that "[f]or claims less than $75,000, the AAA's Supplementary Procedures for Consumer-Related Disputes will apply." Norris Decl. ¶ 27. The Supplementary Procedures state that they act in conjunction with the Commercial Dispute Resolution Procedures ("Commercial Arbitration Rules"). *See* AAA Supplementary Procedures for Consumer-Related Disputes § C-1(a). As observed by the Supreme Court, "[t]he rules of the American Arbitration Association provide that arbitrators have the power to resolve arbitrability questions." *Henry Schein, Inc.*, 139 S. Ct. at 528. Specifically, Rule 7 of the AAA Commercial Arbitration Rules states that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *See* Commercial Arbitration Rules, at Rule 7 – Jurisdiction. When the arbitration provision states that arbitration shall be conducted pursuant to the AAA rules—which contain an explicit delegation clause—the arbitration provision has made a clear delegation of scope-determining authority to an arbitrator. *See Carnevali*, 2019 U.S. Dist. LEXIS 10034, at *7 ([T]he Court finds that the language of the parties' contract compels the conclusion that the arbitrator must determine the threshold issue of arbitrability in this case. The Arbitration Agreement provides for arbitration according to the American Arbitration Association ("AAA"), whose rules require the arbitrator to determine whether the arbitration agreement applies to a particular dispute."); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (referring to Rule 7 of the AAA Commercial

Arbitration Rules and holding that "when, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator"); *Turner v. Pillpack, Inc.*, 2019 U.S. Dist. LEXIS 90271, at *15 (W.D. Ky. May 29, 2019) ("When parties agree to settle claims related to a contract according to the rules of the AAA, 'they provide a 'clear and unmistakable' delegation of scope-determining authority to an arbitrator' because the AAA rules 'provide[] that 'the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . scope . . . of the arbitration agreement.'").

Accordingly, the Court should refer Plaintiff's claims directly to arbitration for the simple reason that Plaintiff agreed to an arbitration provision that contained a delegation clause.

        *2.*     *Plaintiff's claims fall within the scope of the arbitration agreement.*

Although the analysis of the scope of the arbitration agreement should be left to the arbitrator as required by *Henry Schein, Inc.*, even if this Court were to decide that issue, there can be no question that Plaintiff's claims fall within the scope of the arbitration clause. The mandatory arbitration provision to which Plaintiff agreed is extremely broad, stating that it applies to "**any and all claims or Disputes between [Metro] and [Plaintiff], in any way related to or concerning the Agreement, [Metro's] Privacy Policy, [Metro's] Services, [or] devices or products.**" Norris Decl. ¶¶ 21, 23 (emphasis in original). Plaintiff's claims fall directly within the scope of the arbitration clause because they relate to or concern his Metro Account and Metro's devices and products. Plaintiff premises his claims on text messages he received relating to Metro products and services. These claims directly relate to Metro's devices, products, and services. Thus, Plaintiff's claims clearly and fall within the scope of the arbitration agreement as they relate to his Account with Metro and Metro's products, devices, and services.

### D. Stay or Dismissal of the Action is Appropriate Because Plaintiff's Claims Must Be Submitted to Arbitration.

The FAA provides that, once satisfied that the suit should be moved into arbitration, a court "*shall* on application of one of the parties *stay the trial of the action*." 9 U.S.C. § 3 (emphasis added). Thus, when, as here, a plaintiff asserts claims within the scope of an enforceable arbitration agreement, the court should stay the action pending arbitration. *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992) ("Upon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration."). Because Plaintiff must arbitrate the claims asserted here, Section 3 and Eleventh Circuit case law requires that this case be stayed, if not dismissed.

## V. CONCLUSION

For all the reasons stated herein, Plaintiff is contractually required to individually arbitrate, rather than litigate his claims. Accordingly, Metro respectfully requests that this Court grant its Motion to Compel Arbitration and stay or dismiss this case in favor of arbitration.

Dated: August 2, 2019          Respectfully submitted,
*/s/ Kristine M. Brown*

Kristine M. Brown
**ALSTON & BIRD LLP**
One Atlantic Center
1201 W Peachtree Street, Suite 4900
Atlanta, GA 30309
(404) 881-7000 – Telephone
(404) 881-7777 – Facsimile
kristy.brown@alston.com

Derin B. Dickerson (*Pro Hac Vice forthcoming*)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 W Peachtree Street, Suite 4900
Atlanta, GA 30309
(404) 881-7000 – Telephone
(404) 881-7777 – Facsimile
derin.dickerson@alston.com

**ATTORNEYS FOR DEFENDANT
METROPCS FLORIDA, LLC.**

## CERTIFICATE OF CONFERENCE

Plaintiff was conferred with in a good faith effort to resolve the issues raised in the Motion to Compel Arbitration.  Plaintiff opposes the relief sought in this Motion.

Respectfully submitted,
*/s/ Kristine M. Brown*

## CERTIFICATE OF SERVICE

I certify that on August 2, 2019, I caused to be served a copy of the foregoing Motion to Compel Arbitration, and the document referenced therein, via the Court's ECF system on all counsel of record registered through that system to receive electronic filings in this case.

Respectfully submitted,
*/s/ Kristine M. Brown*
**ALSTON & BIRD LLP**
One Atlantic Center
1201 W Peachtree Street, Suite 4900
Atlanta, GA 30309
(404) 881-7000 – Telephone
(404) 881-7777 – Facsimile
kristy.brown@alston.com
